UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-00238-H

VENTAS, INC.                                                                                              PLAINTIFF

V.

HEALTH CARE PROPERTY INVESTORS, INC.                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ventas, Inc. ("Ventas") has filed suit against Defendant Health Care Property Investors, Inc. ("HCP"), alleging that HCP tortiously interfered with an agreement between Ventas and Sunrise Senior Living Real Estate Investment Trust, Inc. ("Sunrise REIT") for Ventas's purchase of Sunrise REIT's assets and liabilities. HCP has filed a motion to dismiss Ventas's complaint. For the reasons that follow, the Court will deny the motion.

I.

In late 2006, Sunrise REIT conducted an auction of its assets. Those desiring to participate in the auction were required to sign agreements ("Standstill Agreements") that, among other things, prohibited them from making or announcing any bid outside the auction process for a period of 18 months following conclusion of the auction, as well as from taking any action that would require Sunrise REIT to publicly announce a bid outside the auction process. As invitees to the preliminary stages of the auction, both Plaintiff and Defendant entered into Standstill Agreements with Sunrise REIT, though neither was a party to the other's Standstill

Agreement.

In order to participate in the final stages of the auction, i.e. to submit a final bid for purchase of Sunrise REIT, a potential bidder first had to reach an agreement with Sunrise Senior Living, Inc. ("SSL").[1] Only Plaintiff concluded such an agreement, and as such, only Plaintiff submitted a final bid to Sunrise REIT. On January 14, 2007, Plaintiff and Sunrise REIT entered into a binding agreement ("Purchase Agreement") in which Plaintiff agreed to purchase Sunrise REIT at a price of $15 per share.[2] Additionally, Section 4.4 of the Purchase Agreement required Sunrise REIT to abstain from activities in furtherance of alternative bids, and Section 4.1 required Sunrise REIT to use its best efforts to secure shareholder approval of the Purchase Agreement. On January 15, 2007, Plaintiff and Sunrise REIT issued press releases announcing the Purchase Agreement, and Sunrise REIT contacted Defendant directly to inform Defendant of the Purchase Agreement and of the fact that the Standstill Agreement between Defendant and Sunrise REIT remained in force.

On February 14, 2007, Defendant allegedly contacted members of Sunrise REIT's board to discuss making a bid for Sunrise REIT. Later that day, Defendant bid for Sunrise REIT at $18 per share, and issued a press release touting its bid's "clear superiority" to the Purchase Agreement. Though representing Defendant's bid as virtually identical to Plaintiff's, Defendant's bid was in fact contingent upon Defendant's ability to conclude an agreement with

---

[1] As described in the Complaint, SSL is "one of the largest providers of senior living services in the United States" and it "currently manages and operates all of the properties owned by Sunrise REIT, and owns minority interests in certain of the Sunrise REIT properties." Given the "complex agreements that provide SSL with rights that encumber, restrain, and burden Sunrise REIT and the Sunrise REIT properties," it is easy to see why Sunrise REIT would desire to have its buyer establish the feasibility of taking ownership of Sunrise REIT prior to submitting a final bid, rather than later citing inability to work with SSL as a reason for backing out of the sale.

[2] All dollar amounts referred to herein are denominated in Canadian dollars; Sunrise REIT is a Canadian entity.

2

SSL. Furthermore, Defendant's CEO allegedly stated or implied that its bid was intended to harm Plaintiff.

As might be expected, following Defendant's announcement shares of Sunrise REIT rose to trade at $18 per share, and in subsequent days Sunrise REIT issued numerous public statements in an effort to clarify the terms of Defendant's bid. During this time, Defendant made another bid, substantially similar to its previous one.

Following actions filed in the Ontario (Canada) Superior Court of Justice by both Sunrise REIT and Plaintiff, the Ontario court held (in a ruling unanimously upheld on appeal) that the Standstill Agreements remained in effect, that Defendant's bids breached its Standstill Agreement and thus were not bona fide, and that the Purchase Agreement obligated Sunrise REIT to enforce the Standstill Agreements then in force. Soon afterward, the Purchase Agreement was rejected by Sunrise REIT's shareholders, leading Plaintiff and Sunrise REIT to amend the Purchase Agreement to reflect an increase in Plaintiff's offer to $16.50 per share. On April 26, 2007, the purchase was completed pursuant to this amended Purchase Agreement.

Plaintiff has brought two "conceptually similar" claims against Defendant: tortious interference with contract and tortious interference with prospective business advantage. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1080 (W.D. Ky. 1995). Defendant has moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Such a motion requires this Court to construe the complaint in the light most favorable to Plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998), and to accept all the complaint's factual allegations as true. *Id.* The Court may not grant such a motion to dismiss based on disbelief of a complaint's factual allegations. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). Rather, the Court must

liberally construe the complaint in favor of the party opposing the motion, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, — U.S. — , 127 S.Ct. 1955, 1969 (2007).

II.

Defendant makes three arguments in support of its motion to dismiss. The Court will address each in turn.

A.

Defendant's first argument is that Plaintiff's claims are barred by the principle of *res judicata*. *Res judicata* refers to the rule that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (internal citations omitted). The Sixth Circuit requires four elements to successfully assert *res judicata* as a bar to a subsequent claim: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995).

Here, the prior action to which Defendant points is the action in the Ontario Superior Court of Justice, which essentially was one of contract interpretation. It is undisputed that Plaintiff brought no tort claims in that action. In fact, the torts Plaintiff now alleges had not yet ripened at that time.

At the time of the Canadian proceedings in late February and early March, 2007, the conduct ultimately alleged to be tortious may have occurred, but no harm had yet befallen Plaintiff. After all, "the basic tort elements of duty, breach, causation, and damages must all be proven" to make out a tortious interference claim, *Stratmore v. Goodbody*, 866 F.2d 189, 194 (6th Cir. 1989), and until Plaintiff actually paid more for its acquisition of Sunrise REIT than originally anticipated in the Purchase Agreement (i.e. until Plaintiff "locked in" a higher purchase price than it originally agreed to pay), it could not be said that any damage had occurred. *Res judicata* cannot operate to bar claims which were not ripe at the time of the prior proceeding, and as such, *res judicata* will not bar Plaintiff's claims here.

B.

Defendant's next argument is that Plaintiff has failed to state a claim of tortious interference with contract. Under Kentucky law, in order to make out such a claim Plaintiff must show: (1) the existence of a contract; (2) Defendant's knowledge of this contract; (3) that Defendant intended to cause its breach; (4) that Defendant's conduct caused the breach; (5) that this breach resulted in damages to Plaintiff; and (6) that Defendant had no privilege or justification to excuse its conduct. *CMI, Inc.,* 918 F.Supp. at 1079 (citing *Carmichael-Lynn-Nolan Adver. Agency, Inc., v. Bennett & Assocs., Inc*., 561 S.W.2d 99 (Ky.App.1978)).

Defendant makes two arguments here. First, Defendant argues that Plaintiff has failed to show that any interference allegedly committed by Defendant was tortious, i.e. without "privilege or justification." Second, Defendant argues that Plaintiff has failed to show any breach of the Purchase Agreement by Sunrise REIT.

5

1.

In making its first argument, Defendant endeavors to portray itself merely as Plaintiff's business competitor, submitting a bid for a company selling itself in the open marketplace. Omitted from this characterization, however, is the critical and apparently undisputed fact that Defendant was bound by its Standstill Agreement with Sunrise REIT at the time Defendant submitted and publicized its bid. The Court agrees with Defendant that no special tort duty was owed to Plaintiff by Defendant due merely to the existence of Defendant's Standstill Agreement with Sunrise REIT, but finds that the allegation that Defendant broke the "rules of the game" to which Defendant had agreed is nevertheless sufficiently consistent with the "no privilege or justification" element of Plaintiff's claim as to preclude dismissal.

2.

Defendant's second argument, that no breach of the Purchase Agreement occurred, is similarly unavailing at this stage. Plaintiff has alleged a number of specific breaches, including the discussion between the board of Sunrise REIT and Defendant regarding Defendant's impending bid. Complaint at ¶ 37. Some of the alleged breaches appear to be more readily provable than others, but clearly it cannot be said at this point that Plaintiff has failed to plead facts which would be consistent with a breach of the Purchase Agreement by Sunrise REIT.

C.

Defendant's final argument is that Plaintiff has failed to state a claim of tortious interference with prospective business advantage. Under Kentucky law, in order to make out such a claim Plaintiff must show (1) the existence of a valid business relationship or its expectancy; (2) Defendant's knowledge thereof; (3) an intentional act of interference by

Defendant; (4) Defendant's improper motive; (5) causation; and (6) special damages. *CMI, Inc.*, 918 F.Supp. at 1080. Seven factors are to be considered when determining whether an actor's interference is improper: (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the other with which the actor's conduct interferes, (4) the interests sought to be advanced by the actor, (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties. Restatement (Second) of Torts § 767; *see also CMI, Inc.*, 918 F.Supp. at 1080; *NCAA v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1988). Reflecting upon these principles, the Kentucky Supreme Court has noted that "to prevail [on a tortious inteference with prospective business advantage claim] a party seeking recovery must show malice or some significantly wrongful conduct." *NCAA,* 754 S.W.2d at 859. Even where improper interference has occurred, the interfering actor "may escape liability by showing that he acted in good faith to assert a legally protected interest of his own," *id.* at 858, and as this Court has noted in the past, "[i]mpropriety should not be confused with aggressive, competitive business practices." *AMC of Louisville, Inc. v. Cincinnati Milacron Inc.*, 2000 WL 33975582, *7 (W.D. Ky. Jan. 25, 2000).

      As it did with regard to the tortious interference with contract claim, Defendant argues here that any interference was not tortious, i.e. did not have an "improper motive." Defendant argues that Plaintiff has failed to allege "malice or some significantly wrongful conduct" on the part of Defendant, which Defendant argues is fatal to Plaintiff's claim.

      As above, Defendant argues that it merely engaged in "competitive conduct," submitting "a competing bid for shares." Defendant's Memorandum at 14–15. Therefore, Defendant

asserts, it held a "privilege to make a higher bid," and Defendant cites a variety of cases in support of the proposition that shareholders of a target company should not be prevented from considering competing bids just because a contract for the target company's sale has already been concluded.

Again, the facts Plaintiff has plead are that Defendant's first interaction with Sunrise REIT was not its February bids. Rather, Defendant had already concluded a Standstill Agreement with Sunrise REIT in which it agreed not to bid outside the auction process. As discussed above, this observation does not imply that a tort duty to Plaintiff is being extrapolated from Defendant's Standstill Agreement with Sunrise REIT. Rather, by alleging that Defendant broke the "rules of the game" to which it had agreed, Plaintiff pleads facts distinguishable from those to which Defendant analogizes in the cases it cites to the Court. Given that Plaintiff has plead facts that, if proven, could satisfy the "improper motive" element of its claim, it is impossible for the Court to conclude that this claim should be dismissed.[3]

Plaintiff has brought claims against Defendant on which it may well be difficult to succeed. However, at this point in the litigation Plaintiff's burden is merely to have plead facts sufficiently consistent with its theory of the case, which the Court finds Plaintiff has done.

Therefore, having considered all arguments and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is DENIED.

---

[3] Other facts alleged by Plaintiff that prevent the Court from finding that "malice, or some significantly wrongful conduct" could be proven include Plaintiff's allegation that Defendant's CEO "made statements reflecting that a purpose of HCP's improper bids was to harm Ventas and diminish Ventas' value," Complaint at ¶ 46, and that Defendant's press releases deliberately misrepresented the degree to which their bid was "identical to the agreement between Sunrise REIT and Ventas." Complaint at ¶ 39.

cc: Counsel of Record