UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-238-H

VENTAS, INC.                                                                                    PLAINTIFF

V.

HEALTH CARE PROPERTY INVESTORS, INC.                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ventas, Inc. ("Ventas"), originally filed this lawsuit against Defendant, Health Care Property Investors, Inc. ("HCP"), alleging tortious interference with an agreement between Ventas and Sunrise Senior Living Real Estate Investment Trust, Inc. ("Sunrise REIT") for Ventas's purchase of Sunrise REIT's assets and liabilities. Thereafter, HCP counterclaimed against Ventas alleging that Sunrise REIT, whose liabilities Ventas has assumed, misled HCP about the fairness of the auction process. HCP alleges that these misrepresentations prevented it from successfully purchasing Sunrise REIT in the auction.

Ventas has now moved to dismiss these counterclaims. For the following reasons, the Court concludes that HCP cannot succeed in its claim of fraudulent or negligent misrepresentation under any conceivable available circumstances.

I.

A brief summary of the facts may be helpful, though it will be similar to that set forth in the Court's previous Memorandum Opinion. Other facts pertinent to the pending motions will be mentioned as necessary in later sections. However, ultimately the motion rises or falls on the

mere allegations in the counterclaims.

In late 2006, Sunrise REIT conducted an auction of its assets. It required those desiring to participate in the auction to sign confidentiality agreements ("Standstill Agreements"). These Standstill Agreements, among other things, prohibited auction participants from making or announcing any bid outside the auction process for a period of 18 months following the conclusion of the auction, as well as from taking any action that would require Sunrise REIT to publicly announce a bid outside the auction process. Each Standstill Agreement also disclaimed any prior oral representations. As invitees to the preliminary stages of the auction, both Ventas and HCP separately negotiated Standstill Agreements with Sunrise REIT. Neither was a party to the other's Standstill Agreement and neither knew the precise content of the other's agreement.

HCP alleges that Sunrise REIT made specific representations prior to executing the Standstill Agreements that represented "the auction would be conducted on a level playing field," that "no bidder would be given any advantage over any other," and that the same auction rules "would apply to all bidders." HCP also says that its Standstill Agreement was substantially different from the agreements Sunrise REIT entered into with others, and that these differences prevented HCP from acquiring Sunrise REIT. More specifically, HCP's Standstill Agreement permitted only one final bid; the Ventas Standstill Agreement permitted a second final bid if Sunrise REIT entered into a Purchase Agreement with another buyer.

No one disputes that the auction was to proceed in two rounds. Several prospective buyers participated in the first round of bidding, in which the buyers submitted non-binding bids. HCP and Ventas both submitted bids at that stage. From those bids, Sunrise REIT selected a smaller group of prospective buyers that it allowed to submit a final binding bid. Sunrise REIT

would enter into a purchase agreement with the prospective buyer who submitted the winning final binding bid.

Prior to submission of the final bids, Sunrise REIT informed all potential bidders that it would consider only those bids without conditions. In context, this meant that to submit a final bid for the purchase of Sunrise REIT, a potential bidder first had to reach an agreement with Sunrise Senior Living, Inc. ("SSL"), the company that managed the Sunrise REIT facilities.[1] Only Ventas concluded such an agreement and submitted a final unconditioned bid. HCP did neither. On January 14, 2007, Ventas and Sunrise REIT entered into a binding agreement ("Purchase Agreement") in which Ventas agreed to purchase Sunrise REIT at a price of $15 per share.[2]

The Purchase Agreement contained a number of relevant provisions. Section 4.4 required Sunrise REIT to abstain from activities in furtherance of alternative bids and to enforce any previous standstill agreements. Section 4.1 required Sunrise REIT to use its best efforts to secure shareholder approval of the Purchase Agreement. On January 15, 2007, Ventas and Sunrise REIT issued press releases announcing the Purchase Agreement, and Sunrise REIT contacted HCP directly to inform HCP of the Purchase Agreement and of the fact that the Standstill Agreement between HCP and Sunrise REIT remained in force.

About one month later, after the auction process concluded, HCP allegedly contacted

---

[1] As described in the Complaint, SSL is "one of the largest providers of senior living services in the United States" and it "currently manages and operates all of the properties owned by Sunrise REIT, and owns minority interests in certain of the Sunrise REIT properties." Given the "complex agreements that provide SSL with rights that encumber, restrain, and burden Sunrise REIT and the Sunrise REIT properties," it is easy to see why Sunrise REIT would want any buyer establish the feasibility of taking ownership prior to submitting a final bid, rather than later citing inability to work with SSL as a reason for backing out of the sale.

[2] All dollar amounts referred to herein are denominated in Canadian dollars; Sunrise REIT is a Canadian entity.

members of Sunrise REIT's board to discuss making a bid for Sunrise REIT. On February 14, 2007, HCP wrote Sunrise REIT to submit a proposal to acquire the company at $18 per share, and HCP also issued a press release touting its bid's "clear superiority" to the Purchase Agreement. HCP's bid remained contingent upon HCP's ability to conclude an agreement with SSL. As might be expected, following HCP's announcement shares of Sunrise REIT rose to trade at $18 per share. In subsequent days Sunrise REIT issued numerous public statements in an effort to clarify the terms of HCP's bid.

In the midst of all this, between February 19 and 21, Sunrise REIT, Ventas, and SSL each commenced actions in Ontario (Canada) Superior Court seeking declarations as to the validity of the various documents and actions just mentioned. On March 5, 2007, that court held that the Standstill Agreements remained in effect, that HCP's bid had breached its Standstill Agreement and thus was not bona fide, and that the Purchase Agreement obligated Sunrise REIT to enforce the Standstill Agreements then in force. HCP, Sunrise REIT and Ventas all supported an emergency appeal. On March 23, 2007, the Court of Appeal for Ontario affirmed the lower court and dismissed the appeal.

Soon afterward, Sunrise REIT's shareholders rejected the Ventas Purchase Agreement. Subsequently, Ventas and Sunrise REIT amended the Purchase Agreement to reflect an increase in Ventas's offer to $16.50 per share. On April 26, 2007, the purchase was completed pursuant to this amended Purchase Agreement.

## II.

To make a claim for any actionable misrepresentation, HCP must show that (1) Ventas or Sunrise REIT made a material misrepresentation; (2) that it was false; (3) that when it made the

4

representation the company knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) that it made the representation with the intention of inducing HCP to act; (5) that HCP acted in reliance upon it; and (6) that the misrepresentation caused HCP to suffer an injury. *Clark v. Danek Med., Inc.*, 64 F.Supp.2d 652, 655 (W.D. Ky. 1999). Negligent misrepresentation claims are similar, but require that a false representation be made negligently, rather than intentionally. *Id.* at 657. To state a claim for fraudulent concealment, HCP must allege that Ventas or Sunrise REIT "had a duty to disclose [a material] fact," that they "failed to disclose that fact;" and that HCP suffered losses in reliance. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. App. Ct. 2003). Cause, in the case of misrepresentation, means legal or proximate cause. *Flegles, Inc. v. Truserv Corp.*, 2009 WL 424813, *7 (Ky. 2009) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980)).

Even after looking at the allegations in a way most favorable to HCP, the Court concludes that certain sound legal principles preclude a claim of actionable misrepresentation in these circumstances.

A.

Inability to show causation constitutes the most glaring shortcoming in HCP's claims of misrepresentation. To prove its claims for misrepresentation, HCP must prove that unfairness in the bidding process prevented HCP from acquiring Sunrise REIT. Ventas argues that the previous rulings of Canadian courts effectively bar such a conclusion. It makes an excellent point.

The doctrine of res judicata holds that "a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim . . ." *Mitchell v.*

5

*Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). Previously adjudicated claims and claims or defenses that should have been raised, but were not, are precluded. *Id.* (citing *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001)). Four elements must be present to apply the doctrine: (1) a prior decision that is final on the merits, (2) presence of the same parties, or parties in privity, to the prior action, (3) presence of a claim that should have been litigated in the prior action, and (4) the existence of an identity between the prior and present action. *Id.* (citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995)). Additionally, "to determine whether a judgment issued by a court of a foreign country is entitled to preclusive effect, the threshold inquiry is whether the case arises under federal question or diversity jurisdiction." *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007) (citing 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4473 (2d ed. 2002 & Supp. 2004)). A federal court sitting in diversity applies the law of the state in which it sits to determine res judicata questions. *Id.*

In 1873 Kentucky stated that it would enforce the judgment of a Canadian Court against a party to that judgment where that court had personal and subject-matter jurisdiction over the party. *Kerr v. Condy*, 9 Bush 372, *2 (Ky. 1872). Kentucky courts will not exercise "revisory power over the judgments of foreign courts." *Id.* Those principles of comity are the same that other courts have found as a basis for respecting decisions of foreign countries' courts. *See e.g.*, *Ritchie v. McMullen*, 159 U.S. 235, 243 (1895); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971); *Perrin v. Perrin*, 408 F.2d 107, 109 (3d Cir. 1969); *Shikoh v. Murff*, 257 F.2d 306, 309 (2d Cir. 1958); *Harrison v. Triplex Gold Mines*, 33 F.2d 667, 670-71 (1st Cir. 1929). Comity "demonstrates due regard both to international duty and

convenience and to the rights of persons protected by [a nation's] own laws." *Somportex Ltd.*, 453 F.3d at 440. Thus, under Kentucky law, and in accordance with notions of comity, the Court should give preclusive effect to the Canadian judgment if it meets the elements of res judicata.[3]

In the midst of the complex fight over Sunrise REIT, that company, Ventas, and SSL sought judicial clarification about the agreements guiding the auction process. By necessity HCP was a party to the action. The parties sought a declaration about the validity of certain terms in the Standstill Agreements and concerning the validity of the auction procedures. Ultimately, the parties asked for a declaration as to whether HCP's post-auction bid was permissible.

After hearing arguments, the Superior Court made careful factual findings and issued the following conclusions: (1) Sunrise REIT must enforce the confidentiality agreement between HCP and Sunrise REIT; (2) the Purchase Agreement was reasonably designed to ensure enforcement of the Standstill Agreements; (3) neither HCP's Standstill Agreement nor any action of Sunrise REIT authorized HCP to submit its late bid; and (4) Sunrise REIT conducted the auction in a manner consistent with the Standstill Agreements and it was not the role of the courts to remit contracts entered into by sophisticated parties.

Sunrise REIT and HCP sought an immediate appeal to the Court of Appeal for Ontario. The Ontario Court stated the issue to be

> whether Sunrise is obliged to enforce the terms of a prior standstill agreement entered into between it and [HCP] in the course of the auction process and which prohibits [HCP] from making an offer for the Sunrise assets without Sunrise's consent. If the answer to

---

[3] At some level, United States courts must depend upon the validity, fairness and competence of the foreign court upon which it proposes to rely. The procedures and opinions of the Ontario courts give this Court every belief in their reliability. Its factual summary is thorough and fair; its legal analysis seems deliberative and reasonable.

>>that question is "Yes," Sunrise will be precluded from considering or accepting the richer [HCP] offer pending the unitholders' meeting.

The Court of Appeal held: (1) HCP's Standstill Agreement precluded HCP from submitting a subsequent bid and the Purchase Agreement required Sunrise REIT to enforce the Standstill Agreement; (2) the requirement that Sunrise REIT enforce the Standstill Agreement against HCP is balanced and objectively reasonable in the context of the auction; and (3) the Sunrise REIT trustees acted reasonably in designing the auction process as a way to maximize its value and conducted the auction to a point of attracting a successful bidder. They acted properly in doing so. The Court of Appeal dismissed the appeal and upheld the decision of the Superior Court.

In the Canadian litigation, Ventas and HCP took adverse positions on the critical issues concerning the fairness of the process and the fairness and enforceability of the Standstill Agreements. The preclusive findings of the Canadian court bar any potential finding either that the differing Standstill Agreements constituted a material disadvantage for HCP or, more pertinently, that any difference actually caused damage to HCP. Essentially, the Canadian court concluded that HCP never made an acceptable bid for Sunrise REIT. By making that conclusion, the Canadian court also suggests that the process must have been fair.

HCP lost the auction because it was unable to reach a definitive agreement with SSL, which, in turn, would have permitted it to submit a conforming bid to purchase Sunrise REIT. HCP failed to submit a proper bid or any bid within the auction deadline. This failure prevented initial consideration of their interest and allowed Ventas to sign its contract. HCP was precluded from making a subsequent bid. Indeed, HCP effectively never entered a bid for Sunrise REIT.

HCP's own decision not to make a final, and proper bid, for Sunrise REIT caused HCP's injury. Many events transpired subsequently outside the original envisioned auction process,[4] but none of these events are material to HCP's claim of fraud or misrepresentation.

B.

Regardless of the Canadian courts' decisions, HCP's allegations do not suggest sufficient reliance causing an actual injury as a consequence of any statement Sunrise REIT made. HCP's claim hinges upon the idea that it was disadvantaged because Ventas's Standstill Agreement allowed Ventas to make a follow on bid, but HCP's Standstill Agreement did not allow HCP the same latitude. The problem with this theory is that even if true, the evidence does not demonstrate that HCP was harmed by acting in reliance on the Standstill Agreements. Neither party knew that the other agreements contained different provisions. If Ventas had an extra bid, it would have tended to bid lower on its first. If HCP had only one bid, it would have tended to make its highest bid. Even if the Court is wrong in these assumptions, it does not matter because HCP never made an unqualified bid as Sunrise REIT required of all bidders and nothing concerning the Standstill Agreement prevented HCP from doing so. Consequently, HCP's failure to purchase Sunrise REIT could not possibly have been caused by reliance on the terms of the Standstill Agreements, despite their alleged inequality.

HCP also complains that SSL, a third party, was unfair to HCP and that its actions created an unleveled playing field. Sunrise REIT is not in a position to control the arrangements that SSL made with potential suitors of Sunrise REIT. HCP has not alleged that Sunrise REIT or

---

[4] It is important to recognize that the manner in which Sunrise REIT dealt with Ventas after HCP submitted its unauthorized late bid is entirely irrelevant to the question of whether Sunrise REIT treated HCP unlawfully. All this Court needs to determine is that Sunrise REIT had no obligation to accept HCP's bid under the auction process. On that issue, this Court, as the Ontario court has already done, can rule with certainty.

SSL worked with Ventas to deceive HCP or to disadvantage HCP. Sunrise REIT required all bidders to make an unconditional bid, which is one that included a definitive agreement with SSL. For whatever reason, HCP did not make an unqualified bid for Sunrise REIT under the rules in place. Without making such a bid, HCP has no right under the existing rules to claim any right for consideration of its bid. It failed in every way to abide by the valid auction conditions. It failed to submit a proper bid as required. And, it submitted a post-auction bid that its Standstill Agreement expressly forbid. Thus, HCP cannot show that reliance on Sunrise REIT caused it injury. HCP could not purchase Sunrise REIT because HCP did not complete the bidding process.

C.

HCP's shortcomings do not end with reliance and causation. HCP argues that Sunrise REIT's representation that the sale process would be conducted "on a level playing field" or that the same rules "would apply to all bidders," constitute actionable misrepresentations. HCP makes no other allegations of misrepresentation. Ventas does deny that the statements of this nature were made. The Court concludes that such a general and indefinite statement about future conduct cannot be the basis of any misrepresentation claim.

As a general rule, representations as to future conduct do not support a claim of fraudulent misrepresentation. *Church v. Eastham*, 331 S.W.2d 718, 719 (Ky. 1960). The representations must concern current and definite conditions. *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007). General and indefinite statements will not suffice. *See id.*; *see also Pitney Bowes, Inc. v. Sirkle*, 248 S.W.2d 920, 922 (Ky. 1952). Statements or opinions regarding the future may be actionable if they are stated while knowing

10

that "no such thing is in fact contemplated or will come to pass." *Elec. Hammer Corp. v. Deddens*, 267 S.W. 207, 209 (Ky. 1924).

Sunrise REIT made the alleged statements on or about November 2, 2006, several days prior to execution of the Standstill Agreements and several weeks prior to the distribution of any confidential information. Any statements regarding the bidding process were made in advance of these additional procedures and thus are properly construed as promises referring to future events. Since the statements regard the future, and no evidence suggests that Sunrise REIT deliberately made them as false opinions, they cannot reasonably be considered actionable statements. The vagueness of the statements further supports this conclusion. Since the statements are vague and indefinite they cannot reasonably be construed as statements of fact; the statements were not verifiable then, nor easily verifiable even now. In truth, as this opinion previously discussed, the evidence does not support that these statements were in fact false.

The Court concludes that Sunrise REIT's statements as alleged do not arise to actionable misstatements under Kentucky law.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Ventas' motion to dismiss the counterclaims is SUSTAINED and the counterclaims are DISMISSED WITH PREJUDICE.

cc:   Counsel of Record