UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-238-H

VENTAS, INC.                                                                                              PLAINTIFF

V.

HEALTH CARE PROPERTY INVESTORS, INC.                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Defendant, Health Care Property Investors, Inc. ("HCP"), has filed a motion for leave to file a second amended counterclaim in its ongoing to dispute with Plaintiff, Ventas, Inc. ("Ventas"), over the process and result of Ventas's purchase of Sunrise Senior Living Real Estate Investment Trust, Inc. ("Sunrise REIT"). In a previous opinion, the Court dismissed HCP's first amended counterclaim, which also alleged fraudulent concealment and fraudulent and negligent misrepresentations.

HCP's new motion re-asserts the same misrepresentation claims with more specific facts. Not surprisingly, Ventas opposes the motion on the grounds that the amended counterclaim is similar in most material matters to the one already dismissed. The Court has taken a fresh look at the issues by thoroughly reviewing the new counterclaim and discussing it with counsel. HCP says directly that it is attempting to address or avoid the deficiencies that the Court identified when dismissing the first amended counterclaim. Notwithstanding their determination, many of those same deficiencies remain.

I.

Fed. R. Civ. Pro. 15(a)(2) states that a party may amend its pleadings additional times with the court's leave. Such leave is to be given freely "when justice so requires." FRCP 15(a)(2); *see also Keweena Bay Indian Comty v. Mich.*, 11 F.3d 1341, 1348 (6th Cir. 1993). The trial court has discretion as to whether to permit amendment. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-32 (1971)). That discretion is limited by Fed R. Civ. P. 15(a)'s liberal amendment policy. *Id.* (citing *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)).

In making its decision, the Court may consider many factors, such as delay, lack of notice or bad faith. *Id.* Those factors are not present here. Where the amended counterclaim "suffer[s] from the same infirmities as the original complaint and thus would not withstand a motion to dismiss," however, the Court may appropriately deny leave to amend as futile. *Keweena Bay Indian Comty*, 11 F.3d at 1348; *see also Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006) (affirming the district court's denial of a motion for leave to amend the complaint where the additional facts in the amended complaint do not further the previously dismissed claim). The Seventh Circuit has similarly stated that where "the amended claim would not survive a motion for summary judgment, the amendment is futile." *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).

The Court has already carefully considered the many of the issues relevant to the second amended counterclaim. In its previous Memorandum Opinion, the Court reached the following relevant conclusions:

    1.    HCP lost the auction for Sunrise REIT because it did not submit a qualifying

unconditional bid. Nothing about the process prevented HCP from submitting such a qualifying bid.

        2.        In the Canadian litigation, Ventas and HCP took adverse positions as to whether the auction process was fair and whether Sunrise REIT could enforce its Standstill Agreement with HCP. The Canadian courts ruled that Sunrise REIT must enforce the Standstill Agreement against HCP; concluding essentially that HCP never made a qualifying bid to Sunrise REIT and that the auction process was fair.

        3.        Because it failed to submit a qualifying unconditional bid, HCP could not show either reliance or causation as to any of its counterclaims.

        4.        The misrepresentations that HCP did allege were vague, indefinite, and concern future conduct. Consequently, these statements cannot be reasonably actionable under a claim for either negligent or fraudulent misrepresentation.

The Court has reviewed the proffered second amended counterclaim in full and in comparison to the original amended counterclaim. In Section II of this Memorandum Opinion, the Court will set out these factual claims in full. In Section III the Court will briefly discuss why each of these conclusions remain applicable to the second amended counterclaim.

II.

The new counterclaim asserts that HCP reasonably relied on Sunrise REIT's statements that the process was to be a structured and formal auction, which would not create an advantage for any bidder, for the purpose of getting the highest price. Paragraph 23 of the second amended counterclaim specifically articulates examples of the "representations" on which Defendant rests its claim. First, Defendant asserts that the draft Confidentiality Agreement, which contained the

18 month standstill provision, indicated that Sunrise REIT intended to restrict any post-auction topping bids. Second, Defendant asserts that Sunrise REIT impliedly represented that the standstill provision was non-negotiable for all bidders because (1) Sunrise REIT refused HCP's request to shorten it to 12-months; (2) Sunrise REIT required HCP to sign a confidentiality agreement; (3) TD Securities informed HCP that only purchasers with a "confidentiality agreement in the form required" could participate in the auction; (4) Sunrise REIT reminded the bidders of "their confidentiality, standstill and other obligations contained in the Confidentiality Agreement;" and (5) when Sunrise REIT extended the auction deadline it said "that the same criteria would be applied to all bids." Third, Defendant highlights representations relating to the fairness of the auction process, including (1) TD Securities's November 2006 briefing stating "that the auction was being conducted on a fair, level playing field, with no bidder being given an advantage over any other," and that it was designed to get the highest price possible; (2) the monitoring of communications between HCP and SSL "to ensure that HCP did not gain an unfair advantage over other bidders; (3) the rejection of HCP's early bid and associated statements "that it would continue the 'auction' process, treating bidders equally;" and (4) SSL's President's statements in 2007 that he wanted "to keep playing field level" and that "SSL would not afford any bidder an unfair advantage over another."

  HCP claims that it relied on those statements when signing the Confidentially Agreement that contained a post-auction standstill provision. HCP states it would not have otherwise signed the agreement. That provision then prevented HCP from making a bid for Sunrise REIT after the auction, i.e. a "topping bid." HCP complains that the representations caused it to sustain harm by spending money pursuing the purchase of Sunrise, prevented it from winning the auction,

prevented it from later buying Sunrise REIT, and caused it to incur litigation expenses. Thus, HCP is refining its counterclaim by claiming that it would not have entered into the bidding at all but for Sunrise REIT's misrepresentations.

III.

The lengthy counterclaim boils down to one overarching theme: that by calling the process an auction, Sunrise REIT implied that each participant would be subject to identical provisions. Consequently, HCP argues, because its Standstill Agreement was different, Ventas somehow gained a material advantage to successfully purchase Sunrise REIT. After careful reconsideration, the Court concludes that the new pleadings do not fix the original deficiencies.

Neither HCP's belief that its agreements would be identical to other prospective purchasers nor its belief about the conduct of an auction, constitute representations by Ventas which can support a claim for misrepresentation. As a general rule, implications about the conduct of future actions cannot form the basis of a misrepresentation claim. This is particularly true as to sophisticated business persons.[1] HCP identifies no statements that directly make any of these specific representations. HCP only identifies a number of facts that *it* implies represent that all bidders will have the same provisions. It reinforces its argument with claims about fairness. The enumerated statements do not support HCP's claim. The statements and circumstances do not represent that every participant will have carbon-copy agreements. HCP cannot point to specific representation that the agreements would be identical. Indeed, HCP

---

[1] *See Flegles, Inc. v. Truserv Corp.*, 2009 WL 424813, *2 (Ky. 2009) (stating that claims for misrepresentation "must relate to a past or present material fact," not merely a "statement of opinion or prediction.") Further, "recipients of business representations [have] a duty to exercise common sense." *Id.* at *3. Allegations must be of an "objective fact." *Id.* However, a future promise is actionable if the speaker never intended to act. *Id.* There is no indication that such mal-intention existed in this case.

itself negotiated revised terms after receiving the form confidentiality agreement. The facts, and the Canadian court decisions, further fail to demonstrate that any specific representation Sunrise REIT actually made about the process was false. The general representations about future conduct, from which HCP attempts to fashion specific implications, will not support a misrepresentation claim.

Regardless whether one of the newly charged misrepresentations could theoretically form the basis of a misrepresentation claim, the second amended counterclaim fails to resolve the causation issues that the Court addressed in its previous Memorandum Opinion. Because HCP failed to submit a qualifying bid as Sunrise REIT required, it is impossible for any misrepresentation to have caused HCP's failure to acquire Sunrise REIT.[2] The Canadian court determined that Sunrise REIT trustees were required to submit Ventas's bid to a vote. Sunrise REIT's shareholders chose to accept that bid. At the time of the vote, the shareholders were aware that HCP had submitted a higher public offer outside the official bidding process. Those same shareholders could have chosen to reject Ventas's bid and wait for HCP to re-submit its higher offer. Thus, Sunrise REIT's alleged misrepresentations did not create an unfairness and did not cause HCP's supposed injuries. In this respect, the new claims change nothing.

IV.

In its previous Memorandum Opinion the Court summarized the rulings of the Canadian courts, discussed the doctrines of preclusion that might bar HCP from pursuing claims previously resolved, but stopped short of a specific finding that *res judicata* or issue preclusion

---

[2] HCP's claimed injury of spending money pursuing the purchase of Sunrise REIT is not as clearly plagued with causation problems. Yet it rests on the questionably actionable statements and does not make clear that HCP would not have pursued Sunrise REIT in any way but for the auction. Part of doing sophisticated purchasing transactions requires expending money to pursue them. As a sophisticated business, HCP would know that.

specifically barred any claim. The Court did say that the Canadian court rulings precluded a finding here that the differing Standstill Agreements constituted a material disadvantage or that any difference caused actual damage to HCP. It declined to examine the intricacies of such a proposition. Since then, the Court has examined the issue further.

Ventas, Sunrise REIT, and SSL originated the Canadian application, naming HCP as a respondent. They did so to resolve the question of whether the Standstill Agreement between Sunrise REIT and HCP was enforceable and fair in the context of the auction process, which goes to the very heart of HCP's contention that the auction process was unfair. First, the lower court concluded that the Standstill Agreement bound HCP not to file an unauthorized acquisition proposal and that Sunrise REIT must enforce that agreement. This conclusion has significant consequences for this litigation. Second, it concluded that Sunrise REIT did not consent either to a waiver of the Standstill Agreement or to the filing of a late proposal. Third, it concluded that it should not rewrite agreements negotiated between sophisticated parties. Here, those agreements seemed to be objectively reasonable and designed to afford protections to all parties to the transactions. The Court of Appeals upheld each of these conclusions. Moreover, the Court of Appeals thoroughly discussed the auction process designed both to maximize shareholder value, attract prospective purchasers, and to protect participating bidders.

The Canadian litigation certainly does not bar further argument about the contracts in question. Parties may later challenge the formation of an instrument even where a previous court has interpreted that contract. *Hays v. Sturgill*, 193 S.W.2d 648, 651 (Ky. 1946). Yet, the Canadian decisions cannot be ignored. Kentucky courts should give preclusive effect to judgments rendered in foreign countries. Mar. Mem. Op. at 6 (citing *Kerr v. Condy*, 9 Bush 372,

*2 (Ky. 1872); *Taveras v. Taveraz*, 477 F.3d 767, 783 (6th Cir. 2007)). That preclusive effect is embodied in two separate doctrines: claim preclusion and issue preclusion. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1(1984).

A.

"Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yoeman v. Com. Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) (citations omitted). It requires the following four elements: (1) a prior final decision on the merits; (2) the present action be between the same parties, or their privies, as those to the prior action; (3) the claim in the present action was or should have been litigated in the prior action; and (4) identity between the prior and present causes of action. *See Jackson v. Pepper Gasoline Co.*, 144 S.W.2d 212, 214 (Ky. 1940); *See also Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003) (citing *Kane*, 71 F.3d 555, 560 (6th Cir. 1995)). Parties need not have been plaintiff and defendant in the prior action if they asserted adverse interests against one another. *Vaughn's Adm'r v. Louisville & N.R. Co.*, 179 S.W.2d 441, 444 (Ky. 1944).

It seems pretty clear that claim preclusion does not apply to HCP's counterclaims. The Canadian litigation interpreted the construction of the agreements in the context of the auction process. As such, it made no finding regarding the validity of the contracts themselves. Kentucky courts have specifically stated that a party is not precluded from contesting the validity of a contract in a later proceeding where a court interpreted the contract in a prior proceeding. HCP did not claim the Standstill Agreements were fraudulently induced in the prior litigation, nor did HCP have to raise that issue.

Further, HCP's counterclaims assert that Sunrise fraudulently induced HCP into signing the Standstill Agreement.[3] Sunrise and HCP were not generally adverse in the previous litigation.[4] They both sought a declaration that Sunrise could consider HCP's bid. Thus, HCP's claims against Sunrise would not be claim precluded in later litigation. Ventas, as the successor-in-interest, should be afforded the same preclusive effect of decisions that Sunrise would be granted itself. That is the nature of the privity relationship. Ventas's acquisition of Sunrise should not result in broader claim preclusion. Ventas may not interpose its adverse stance against HCP onto Sunrise simply by acquiring Sunrise. Thus, the Canadian litigation does not bar HCP's counterclaims under claim preclusion.

B.

"Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Yoeman v. Com. Health Policy Bd.*, 983 S.W.2d at 465. The requirements for issue preclusion are slightly different, requiring that (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in

---

[3] The claims are asserted against Ventas only because Ventas stands as successor-in-interest to Sunrise.

[4] *See* Ventas, Inc. v. Sunrise Senior Living Real Estate Investment Trust (2007), 85 O.R.3d 254, at ¶¶ 21-23. The Superior Court stated that HCP and Sunrise made similar arguments "with respect to the interpretation to be given to the Purchase Agreement," which the Superior Court went on to address jointly. *Id.* at ¶¶ 27, 39. It concluded, however, that HCP and Sunrise took different positions as to whether the Standstill Agreement continued to bind HCP and whether Sunrise had provided consent to HCP for it to submit a bid. *Id.* at ¶ 43. Sunrise and HCP both appealed the Superior Courts decision, which Ventas supported. Ventas, Inc. v. Sunrise Senior Living Real Estate Investment Trust (2007), 22 O.A.C. 102, at ¶ 6. This further supports the conclusion that Sunrise and HCP were not adverse in the previous litigation.

the prior proceeding. *Kosinski v. C.I.R.*, 541 F.3d 671, 675 (6th Cir. 2008) (quoting *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir.2003) (internal quotation marks omitted)). The party asserting issue preclusion need not have been an adverse party in the prior suit. *Moore v. Com.*, 954 S.W.2d 317, 319 (Ky. 1997) (citing *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970)); *see also Lyndon Property Ins. Co. v. Menifee County Fiscal Court*, 2006 WL 742262, *3 (Ky. App. 2006) (discussing *Moore*). The party to be bound must be a party to the prior action. *Id.* Issue preclusion only applies to matters that were necessarily involved and determined in the prior action. *Sedley v. City of W. Buechel*, 461 S.W.2d 556, 558 (Ky. 1970).

Issue preclusion presents a different analysis. At the heart of the Canadian litigation is the question of whether HCP could permissibly submit their topping bid. HCP argued that the Standstill Agreement should not preclude its topping bid, because such enforcement would not comport with HCP's understanding of this auction process context.[5] HCP thereby put the context of the agreements, i.e. the auction process itself, directly at issue in the Canadian litigation. HCP raised and argued that same issue in both its brief to the Ontario Superior Court and the Ontario Court of Appeals. *See* HCP Factum Sup. Ct. ¶¶ 5, 36, 37, 38, 40, 65, and 70; HCP Factum Ct. of App. ¶¶ 30, 32, 34, 63. It argued that the context of the agreement, which was the nature of the auction process itself, was critical to the interpretation of the agreements. HCP Factum Sup. Ct. ¶ 40. It specifically argued that if the parties to an auction process had two different standstill agreements, then "[a]uction participants would not be playing on a level

---

[5] It should be noted that both Ventas and HCP presented additional bids. The shareholders of Sunrise REIT could have rejected the Ventas bid had they concluded that HCP presented a more promising and lucrative option for the company. Thus, in a manner of speaking, HCP did submit a final topping bid, which was unsuccessful.

-10-

field." HCP Factum Sup. Ct. ¶ 37; HCP Factum Ct. of App. ¶ 34.

The Canadian courts rejected these arguments. The Appellate Court found that the Superior Court necessarily took that context into account in rendering a decision. Can. Ap. Dec. at ¶ ¶ 24, 51-52; Can. Sup. Ct. Dec. ¶ 38-39. The Court of Appeals affirmed that it was necessary to address the nature of the auction process in order to enforce the Standstill Agreement. Can. App. Dec. at ¶ ¶ 45, 47 - 54.

HCP makes the same fairness arguments in its claims for fraud in the inducement. It argues that the auction process was unfair and misrepresented as a "bang the gavel" auction, leaving bidders on an "uneven playing field." The construction of the contract necessarily depends on the context in which it was formed. The Canadian courts considered that context and declined to say thme.at the process was unfair or inequitable, even in the face of HCP's arguments.[6] That conclusion meets the requirements of issue preclusion: the issue was raised and litigated by HCP; its resolution was essential to the Canadian courts' final decisions on the merits; and the conclusion is now asserted against HCP. To the extent that HCP's present claims are based on the grounds of unfairness in the auction process, the Canadian decisions could reasonably be applied to preclude re-litigation of that issue. Sunrise REIT should not now be punished for following the Canadian courts' decisions and submitting Ventas's bid to its shareholders. Nor should it be required to litigate an issue that the Canadian courts fairly resolved in the midst of the real dispute.

V.

---

[6] The appellate court found that Sunrise REIT used an auction process designed to maximize the share price. Can. App. Dec. ¶¶ 55-56. It confirmed that the superior court had similarly reviewed the entire circumstances, concluding that this was an auction that maximized profits and that the parties properly understood the process. Can. App. Dec. ¶¶ 46-50.

For all these reasons, the Court denies HCP's motion for leave to file a seconded amended counterclaim. This does not, however, preclude HCP from using the issues presented in their counterclaim to defend against Plaintiff's claim for tortious interference. HCP may still argue that it was entitled to act as it did given the full facts of the situation. The Court's present order in no way precludes HCP from arguing the facts presented in the second amended counterclaim. It makes no comment on the tortious interference claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant HCP's motion for leave to file a second amended counterclaim is DENIED.

cc:   Counsel of Record