UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| VENTAS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:07-cv-00238-JGH |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| HCP, INC., ) | |
| ) | |
| Defendant. ) | Redacted; Public Version |
| ) | |

**MEMORANDUM IN SUPPORT OF VENTAS PRETRIAL MOTION NO. 8**

**VENTAS'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION *IN LIMINE* TO
EXCLUDE TESTIMONY OF DANIEL R. FISCHEL**

Plaintiff Ventas, Inc. respectfully moves this Court to enter an Order, pursuant to Rules 402, 403, and 702 of the Federal Rules of Evidence and Rule 44.1 of the Federal Rules of Civil Procedure, granting Ventas's Motion *In Limine* to Exclude Testimony of Daniel R. Fischel, specifically:

1. That is based upon Canadian securities law or relies upon the opinions of Professor Nicholls on Canadian law, as all issues of foreign law should be resolved by this Court under Rule 44.1 and this Court should reject and exclude the Canadian law opinions of Professor Nicholls for the reasons set forth in Ventas Pretrial Motion No. 2;

2. That the Sunrise REIT sale process was "flawed," solely because of the difference in standstill agreements negotiated by the bidders, as the process was controlled by Canadian law, and the Canadian courts have rejected this very assertion;

3. That Sunrise REIT "suppressed information" because the REIT's disclosure obligations were controlled by Canadian law and, if the REIT's disclosure obligations are

relevant, this Court should find under Rule 44.1 that Canadian law did not require the REIT to make the hypothetical disclosures identified by Professor Fischel;

4. That Professor Fischel's statistical analyses based on flawed methodology, including flawed arbitrage and probability models, are not reliable and are irrelevant in this case;

5. That Ventas's investment advisor, Merrill Lynch, reached an opinion that Sunrise REIT was worth more than $15 per unit, when Merrill Lynch has expressly testified that Professor Fischel's factual assertion about its valuation is false;

6. That ING or Morgan Stanley would have publicly opposed Ventas's Purchase Agreement at $15, when there is no factual basis for that speculation and it is not a matter for expert opinion;

7. That HCP's topping bid was socially beneficial or an efficient breach, because Professor Fischel has clarified that he has not rendered an opinion on that topic;

8. That the other opinions in Professor Fischel's opening report do not contain expert analysis, because his opening report merely recites the facts of this case from his perspective and asserts two conclusions without expert analysis.

## Argument

I. **Professor Fischel Is Not Qualified To Opine On Canadian Legal Obligations And Cannot Rely On Professor Nicholls's Hypothetical Legal Opinions.**

  A. **Professor Fischel cannot rely on the opinions of Professor Nicholls on Canadian legal issues, as issues of foreign law must be decided by this Court.**

Professor Fischel concludes ███████████████████

███████████████████████████████████████████████

███ (Ex. 1, Fischel Rpt. ¶¶ 15-16.) However, Professor Fischel's opinion is based on ███

███████████████████████████████████████████████

███████████████████████████████████████████████

2

████████████████ (*Id.* at ¶ 15; Ex. 2, Fischel Dep. 71:13-72:7.)[1] As demonstrated more fully in other Ventas Pretrial Motions, Professor Nicholls's opinion regarding Sunrise REIT's disclosure obligations under Canadian law is inadmissible for a number of significant reasons, and matters of foreign law are questions that should be decided by the Court under Rule 44.1. (Ventas Pretrial Motion No. 2.) Professor Nicholls's opinions regarding Canadian law are incorrect. All of Professor Fischel's opinions that depend upon Professor Nicholls's opinions on Canadian law should be excluded for the same reasons that Professor Nicholls's opinions should be excluded.

Professor Fischel concludes ████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 2, Fischel Dep. 24:18-26:2.) This opinion is improper and inadmissible for at least two reasons.

First, disclosure was an issue actually decided in the real world by Sunrise REIT based on Canadian law. Sunrise REIT reasonably decided that HCP's non-binding, conditional proposals should not have been disclosed. As discussed in more detail in Ventas Pretrial Motion No. 2, Sunrise REIT's outside counsel who drafted the Sunrise REIT proxy, Mr. Donald Belovich, testified that, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ventas Pretrial Motion No. 2.) Professor Fischel ████████████████████████ (Ex. 2,



---

[1] All citations to Professor Fischel's deposition refer to the rough transcript, as it is the only version available at the time of the Motion.

Fischel Dep. 70:18-71:2.)[2] No witness from Sunrise REIT has testified to a different view. "When indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

Second, any attempt to base his opinion about what Sunrise REIT was obligated to disclose based on the opinions of Professor Nicholls would be flawed for all of the reasons that Professor Nicholls's opinions are flawed, as discussed in Ventas Pretrial Motion No. 2. Professor Nicholls's opinions on Canadian law are inadmissible and should be rejected by this Court. (Ventas Pretrial Motion No. 2.)

Professor Fischel's opinions premised on unfounded Canadian legal opinion or relying on the inadmissible opinions of Professor Nicholls's regarding Sunrise REIT's disclosure obligations should be excluded and HCP should be precluded from offering any testimony or argument based those opinions.

### B. Professor Fischel's opinion that the Sunrise REIT sale process was "flawed" would be precluded by res judicata and collateral estoppel.

Professor Fischel concludes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1, Fischel Rpt. ¶21.) This is the only basis for Professor Fischel's opinion, yet it is the very issue that the Canadian courts decided. (Ex. 3, Ont. App. Ct. ¶¶ 55-57.) Relying on the Canadian ruling, this Court, in dismissing HCP's counterclaims, held that the preclusive effects of the Canadian decisions "bar any potential finding either that the differing Standstill Agreements constituted a material disadvantage for HCP, or more pertinently, that any different

---

[2] Similarly, Sunrise REIT Chairman Michael Warren testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ventas Pretrial Motion No. 2.) Mr. Belovich concurred. (*Id.*)

4

actually caused damage to HCP," leading to the conclusion that "the process must have been fair." (Dkt. 154, 3/25/09 Mem. Op. and Ord. at 8.) Then in denying HCP's motion for leave to amend its counterclaims, this Court again expressly precluded HCP from re-litigating the issue of "unfairness in the auction process" pursuant to the Canadian decisions. (Dkt. 186, 5/26/09 Mem. Op. at 11.)

Based on these rulings, Professor Fischel's opinion should be excluded and HCP should be precluded from offering any testimony or argument based those opinions.

### C. Professor Fischel's opinion that information was "suppressed" is both contrary to the evidence in this case and an inadmissible legal opinion.

Professor Fischel opines ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 1, Fischel Rpt. ¶ 15) (emphasis added). Similarly, in his deposition, Professor Fischel opined ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 2, Fischel Dep. 279:3-281:15.) However, the disclosure requirement of the parties in this case is clearly a legal issue under Canadian securities law. (Ventas Pretrial Motion No. 2.)[3]

HCP has no legal basis to second-guess the disclosure decisions of Sunrise REIT under Canadian law, and in any event, such contention about foreign law is an issue for this Court under Rule 44.1. If relevant, this Court should reject Professor Nicholls's assertions and exclude Professor Fischel's opinions and testimony.

---

[3] Additionally, allowing use of a term ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

5

## II. Professor Fischel Is Not Qualified To Opine On Statistical Analysis And Should Be Precluded From Presenting Flawed Statistical Analyses Regarding Arbitrage Or Probability Models.

Professor Fischel testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2, Fischel Dep. 31:19-32:6.) A complete lack of training in statistical methods is sufficient standing alone to exclude an expert's testimony based on those methods under Rule 702. *E.g., LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (excluding proposed damages experts who did not have training in accounting or finance because the expert was "not a trained economist and cannot legitimately educate a jury on many of the complex economic aspect of the damages model"); *Weitlauf v. Parkway Sch. Dist.*, 2008 WL 544716, *2 (E.D. Mo. Feb. 26, 2008) (excluding expert testimony because the expert had "no formal training in the field of economic losses as alleged in this lawsuit, no experience or practical knowledge that would provide him with some level of expertise in such a field; thus, he fails to meet the criteria of Rule 702 and/or *Daubert*"). Moreover, the methods that Professor Fischel has based his conclusions on are advanced methods in the field, and require specialized knowledge above that of a trained econometrician or statistician. Professor Fischel's opinions on statistical and empirical matters reflected this fundamental lack of expertise.

Professor Fischel relies on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1, Fischel Rpt. ¶ 8) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Professor Fischel's methodology ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as his testimony has been in another case

6

involving statistical methodology. *See Abrams v. Van Kampen Funds, Inc.*, 2005 WL 88973, *10 (N.D. Ill. Jan. 13, 2005) (excluding Professor Fischel's testimony, which was "not supported by adequate methodology").

Admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides, in part, "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if . . . (2) *the testimony is the product of reliable principles and methods.*" Fed. R. Evid. 702 (emphasis added). Rule 702 requires that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001).

Expert testimony must be supported by adequate methodology in order to be relevant. *Abrams*, 2005 WL 88973 at *10. The degree to which experts in the field accept and rely on the methodology is a principle consideration of Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993); *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004). The acceptance of the methodology is not only important in emerging fields, but also in fields such as accounting and statistics. *Club Car, Inc.*, 362 F.3d at 780 (excluding testimony based on methodology not accepted in the accounting community); *Malletier v. Dooney & Burke, Inc.*, 525 F. Supp. 2d 558, 568-69 (S.D.N.Y. 2007) (excluding a survey containing "methodological flaws" and a "fundamental misunderstanding" of the relevant theories). The focus of this inquiry is on the principles and methodology used by the proposed expert, and courts need not simply take the expert's "word for it." *See Haller v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1271, 1299 (M.D. Fla. 2009); *see also Daubert*, 509 U.S. at 595.

Professor Fischel's statistical analysis using arbitrage and probability models is fundamentally flawed and should be excluded under Rule 702.

### A. Professor Fischel's statistical analysis and opinions using flawed time period analysis should be excluded.

Professor Fischel's methodology is based on fundamental flaws that render his analysis unreliable and irrelevant in this case. For example, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Ex. 4, Fischel Rebuttal Rpt. ¶¶ 18-24, Exs. P, Q, R, S.) Arbitrage spread analysis compares the price of stock relative to a proposed transaction price, adjusts for the time value of the stock at closing based on trading dates left to closing, and determines the percentage by which the market is discounting the likelihood of success. Consistently low arbitrage percentages (here under 2%) indicate that the market believes (and is making investment decisions based on the premise that) a transaction is virtually certain to close. By contrast, high arbitrage spread numbers and volatility in arbitrage spread numbers reflect uncertainty about whether the transaction will close. And a negative arbitrage spread number indicates the stock is trading above the bid price (as occurred after the HCP prohibited announcement) and that the transaction is likely to fail at the current price.

It is fundamental in conducting arbitrage analysis, and particularly when comparing the spread in one transaction to another, to count the days backward from the time of the anticipated event (closure of the deal). This ensures that the time value of money is accounted for consistently across different transactions which pend approval for different temporal durations. Also, the closer the date of completion is in time, the more reliable the arbitrage analysis becomes. The REIT's stock trading between January 15 and February 14, 2007 occurred 55 to 33 trading days prior to the scheduled close of the transaction on April 2. As a consequence, Professor Lys ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

8

(Ex. 5, Lys Rpt. ¶¶ 77-85.)   He found ███████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████   By contrast, failed transactions generally had much higher arbitrage spread numbers (or negative numbers) during this same period.

Professor Fischel ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████ (Ex. 4, Fischel Rebuttal Rpt. ¶¶ 18-24.)   It is well-recognized in the field that this is not the proper methodology.[4]  This analysis is akin to predicting the winner of a one mile race between two runners by observing which runner is in the lead during the first 100 yards.  Obviously, looking at which runner is in the lead during the last 100 yards, will provide a much more reliable means of prediction.  Professor Fischel's conclusions ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████

The proper statistical method, as in a race, would be to base the comparison across races or transactions from an equal distance to the finish.  In fact, Professor Fischel ████████

---

[4] *See* Ex. 6, Keith C. Brown & Michael V. Raymond, "Risk Arbitrage and the Prediction of Successful Corporate Takeovers," 15 *Financial Management* 54-63 (1986); Ex. 7, William Samuelson & Leonard Rosenthal, "Price Movements as Indicators of Tender Offer Success," 41 *The Journal of Finance* 481-99 (1986).

9

███████████████████████████████████████████████████
███████████████████████████████████████████████████

(Ex. 2, Fischel Dep. 34:13-35:6.) This opinion stands in direct contradiction to his methodology in his reports.

Professor Fischel's use of this fundamentally flawed methodology for arbitrage spread analysis distorts his analysis and makes his testimony on this issue irrelevant.

### B. Professor Fischel's statistical analysis and opinions using negative arbitrage calculations should be excluded.

Professor Fischel's arbitrage spread methodology ███████████████
███████████████████████████████████████████████████
██████████████████████████████ (Ex. 2, Fischel Dep. 37:1-38:12.) In these transactions, █████████████████████████
████████████████████████████████ (*Id.* at 203:2-6.) Such transactions, however, are certain to result in failure and thus, do no create a representative sample of bids seeking approval.

Professor Fischel, however, used ████████████████████████
█████████████████████████████████████████ This is no surprise if negative arbitrage spread numbers (less than zero) are lumped in with those spreads between zero and positive 2 - and all are treated as "less than two." Those between 0 and 2 show a small discount between stock price and the bid price and reliably predict successful completion, while the negative numbers show a stock price above the bid and therefore predict transaction failure. Professor Fischel's ████████████████████████
███████████████████████████████████████

10

**C.    Professor Fischel's statistical analysis and opinions regarding probability analysis should be excluded.**

Professor Fischel also ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████ (Ex. 4, Fischel Rebuttal Rpt. ¶¶ 25-29, Exs. T, U.)   When applying this model, as in any probability model, it is fundamental to constrain the permissible outcomes to a range between 0 and 100%.   Again, however, Professor Fischel ████████████████████████████████████████████████████████
████████████████████████████████████████████ *Id.* Professor Fischel's ████
████████████████████████████████████████████████████████████████
████████  As Professor Fischel stated at his deposition, however:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████.

(Ex. 2, Fischel Dep. 63:16-64:10.)   Although Professor Fischel contends ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ In fact, Professor Lys ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

11

▬ (*Id.* at 64:16-65:6.) When asked ▬ ▬ (*Id.* at 65:21-66:12.)

Accordingly, the Court should exclude the unqualified testimony of Professor Fischel based on statistical methods regarding arbitrage and probability models.

### III. Professor Fischel May Not Offer Opinions That Lack Factual Foundation Or Are Counterfactual.

Professor Fischel should be precluded from offering opinions regarding three additional issues that lack factual foundation in this case or are counterfactual. Expert testimony is "inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 427 (6th Cir. 2006) (affirming district court's ignoring of expert report on summary judgment because the report contradicted the uncontroverted facts). Likewise, "when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd.*, 509 U.S. 209 at 242.

Professor Fischel's following opinions lack factual foundation or are counterfactual and should be excluded.

#### A. That Ventas's investment advisor, Merrill Lynch, reached an opinion that Sunrise REIT was worth more than $15 per unit.

Professor Fischel states ▬ ▬ However, there is no evidence in this case that Merrill Lynch ever valued Sunrise REIT at more than $15 per unit before April 2007. (Ex. 8, Hartman Aff. ¶ 3.) In fact, Professor Fischel ▬  ▬ (Ex. 2, Fischel Dep. 255:3-11.) As Mr. Hartman's affidavit states, ▬ ▬ (Ex. 8, Hartman Aff.) Mr.

12

Hartman's affidavit ████████████████████████████████████

(*Id.*)

Professor Fischel's ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ This Court should preclude this proposed misleading testimony or opinion that Merrill Lynch reached an opinion that Sunrise REIT was worth more than $15 per unit, when it is a false factual assertion. Significantly, Professor Fischel offers no valuation opinions of his own.

> **B.  That ING or Morgan Stanley would have publicly opposed Ventas's Purchase Agreement at $15.**

Professor Fischel opines t████████████████████████████████

████████████████████████████████████████████████████████

████████████ (Ex. 1, Fischel Rpt. ¶¶ 10-14.) As discussed in Ventas Pretrial Motion No. 6, there is no evidence that ING, Morgan Stanley, or any Sunrise REIT unitholder publicly opposed Ventas's $15 offer. Professor Fischel's opinion is not based on any facts as set forth fully in Ventas Pretrial Motion No. 6, and the Court should preclude any testimony or opinion that ING or Morgan Stanley would have publicly opposed Ventas's Purchase Agreement at $15.

> **C.  Professor Fischel acknowledges that he is not opining that the REIT's breach was an efficient breach or provided a social benefit - and HCP should be barred from arguing otherwise based on his testimony.**

Professor Fischel opines ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████ (emphasis added). ██████████████████████████

████

13

When asked at his deposition whether he was offering an opinion ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 2, Fischel Dep. 270:15-271:2.) He went on to state █████████████████████

███████

HCP should be barred from conflating Professor Fischel's opinion about whether the breach economically benefited REIT shareholders with whether it was socially beneficial. No expert testimony is needed on whether the breach economically benefited REIT shareholders - it is undisputed that $16.50 is more money than $15. It is uncontested that Sunrise REIT shareholders received more money as the result of HCP's conduct (and that Ventas paid more on that account), and an expert opinion is unnecessary on that issue. Accordingly, the Court should preclude any expert testimony or opinion on whether HCP's topping bid was "beneficial" to REIT shareholders and preclude HCP from arguing that Professor Fischel's testimony supports a finding that the breach was socially beneficial.

IV. **Professor Fischel's Opening Report And Opinions Should Be Excluded Because They Contain No Expert Analysis.**

Professor Fischel's opening report provides no expert analysis. It recites the facts of this case from his perspective and then asserts two conclusions: ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Professor Fischel conducts no

---

5 ████████████████████████████████████

valuation analysis, no statistical analysis, nor any other analysis requiring expertise. He simply asserts his conclusions.

For all these reasons, Professor Fischel's opening report should be excluded in its entirety.

### Conclusion

For all the above reasons, Ventas respectfully requests that the Court enter an order *in limine* to exclude testimony of Daniel R. Fischel.

Respectfully Submitted,

By: /s/ David J. Bradford
For Ventas, Inc.

David J. Bradford
Terri L. Mascherin
Daniel J. Weiss
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel: (312) 222-9350
Fax: (312) 527-0484

Eric L. Ison
Holland N. McTyeire V
GREENEBAUM DOLL
& MCDONALD PLLC
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
Tel: (502) 589-4200
Fax: (502) 587-3695

Dated: August 4, 2009

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on the 4th day of August, 2009, by e-mail and by using the CM/ECF system, which will send a notice of electronic filing to the following:

*Counsel for HCP, Inc.:*

Sheryl G. Snyder
Theresa A. Canaday
FROST, BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202

Mark C. Hansen
Aaron M. Panner
Courtney S. Elwood
Brendan J. Crimmins
Barrett C. Hester
William David Sarratt
KELLOGG, HUBER, HANSEN, TODD, EVANS, & FIGEL, PLLC
1615 M. Street, NW, Suite 400
Washington, DC 20036-3209

 

VENTAS, INC.

By: /s/ David J. Bradford
One of its attorneys