UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07-CV-238-H

VENTAS, INC.                                                               PLAINTIFF

V.

HCP, INC.                                                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Ventas, Inc.'s ("Ventas") only remaining claim against Defendant HCP, Inc. ("HCP") is for tortious interference with prospective business relations.  The alleged tortious conduct occurred once Ventas and Sunrise REIT ("Sunrise") had signed a purchase agreement that awaited unitholder approval of Ventas's $15 per unit bid for Sunrise's assets.  After the purchase agreement had been signed, but before the unitholders could approve the transaction, HCP sent Sunrise a bid for $18 per unit.  Having progressed to trial, the parties now debate the proper jury instruction on the elements of tortious interference with prospective business relations.  In particular, the parties dispute whether section 767 or section 768 of the Restatement (Second) of Torts provides the proper factors for assessing the nature of the interfering conduct and what form of causation is required to establish the claim.  Kentucky courts have never directly addressed the first of these issues.

I.

Under Kentucky law, liability for tortious interference arises when a party improperly interferes with a valid business expectancy.  *See NCAA v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988).  To prevail on such a claim, the plaintiff "must show malice or significantly wrongful

conduct" on the part of the defendant. *Id.* at 859. In crafting this language to support a claim of tortious interference, the Kentucky Supreme Court officially adopted sections 766, 767 and 773 of the Restatement (Second) of Torts to define the tort. *Id.* Section 766B sets forth the basic elements of the a tortious interference claim.[1] One of those elements, improper interference, is then elaborated on by Section 767, which sets forth seven factors to be considered when determining whether general interference is improper.[2] *Id.*; Restatement (Second) of Torts § 767. Section 768 provides guidance when the circumstances concern competition, mainly whether the specific competition is proper.[3] Restatement (Second) of Torts § 768. Kentucky courts have not officially adopted Section 768 and have not spoken to the necessary interplay between Sections 767 and 768. Therefore, the Court must predict how Kentucky courts would resolve which section properly articulates the analysis for the facts at issue in this case.

---

[1] Section 766B is entitled "Intentional Interference with Prospective Contractual Relation." It reads:
> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

[2] Section 767 is entitled "Factors in Determining Whether Interference Is Improper." The factors are:
(a) the nature of the actors conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

[3] Section 768 is entitled "Competition As Proper or Improper Interference." It provides that competition is proper if:
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and
(d) his purpose is at least in part to advance his interest in competing with the other.

Tortious interference is designed to protect the integrity of existing business relationships. This interest must be balanced, however, with society's strong interest in competition. To that end, section 768 specifically tailors the 767 factors to interference involving business competitors. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1197 (Colo. Ct. App. 2009) (making a similar statement). The provisions themselves, however, are unclear on how the Court should use the two sets of factors in instructing the jury.

The first indication of how the Court should use the sections can be found in the comments to the sections. The comments to section 767 state that 768 supplants the general factors outlined in section 767. Restatement (Second) of Torts § 767 cmt. a. Some courts have strictly interpreted this comment and concluded that situations where the parties are business competitors and the alleged intentional interference is with a prospective business relationship, section 767 simply does not apply. *See e.g. Pino v. Prudential Ins. Co. of Am.*, 689 F. Supp. 1358, 1362 (E.D. Pa. 1988); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 501 (Colo. 1995); *Brookside Ambulance, Inc. v. Walker Ambulance Serv.*, 678 N.E.2d 248, 253 (Ohio Ct. App. 1996); *Harris Group, Inc.*, 209 P.3d at 1196; *RTL Distrib., Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 591 (Iowa Ct. App. 1996) (but incorporating 767 factors to determine "wrongful means" under section 768). Other courts, however, have considered the factors outlined in section 768 as supplementary to section 767 or used them to define the defense of competition. *See e.g. Siren, Inc. v. Firstline Sec., Inc.*, 2006 WL 3257440, *6 (D. Ariz. 2006) (treating competition as a defense); *Buztronics, Inc. v. Theory3, Inc.*, 2005 WL 1865512, *6 (S.D. Ind. 2005) (identifying section 768 as a "'non-exhaustive' set of factors to consider as part of a 'balancing process' in determining whether an alleged tortious interference lacks justification.");

-3-

*Maximus, Inc. v. Lockheed Info. Mgt. Sys. Co., Inc.*, 493 S.W.2d 375, 415 (Va. 1997) (treating competition as a defense); *Soap Co. v. Ecolab, Inc.*, 646 So.2d 1366, 1371 (Ala. 1994) (stating that competition is an affirmative defense).

Clearly, there are multiple ways of addressing the interplay between sections 767 and 768.  In fact, the comments to section 768 recognize the lack of consensus as to whether "competition is an affirmative defense to be raised and proved by the defendant or is simply not improper conduct inconsistent with the American system of free enterprise." Restatement (Second) of Torts § 768 cmt. a.  For the reasons stated below, the Court finds that the appropriate use of sections 767 and 768 is to apply section 768 as the test for whether the defendant's conduct was improper.  However, section 767 can still be used to illuminate the requirements of section 768.

The comments to section 767 that state that section 768 supplants section 767 are highly instructive.  The Kentucky Supreme Court has previously adopted section 767, *Hornung*, 754 S.W.2d at 857, and there is no indication that Kentucky would not follow the comments to section 767 or 768.  Moreover, the *Hornung* case itself is instructive when it held that "it is clear that to prevail a party seeking recovery must show malice or some significantly wrongful conduct." *Id.* at 859.  While the court claimed to be adopting section 767 as defining tortious interference with prospective business relations, this language used by the court follows almost precisely with the language of section 768 and is identical to the instruction the Court has given

-4-

in this case.[4]  The case provides a strong indication that Kentucky would adopt a similar

instruction given the facts of this case.

      Next, the Court is persuaded by the reasonable and logical explanation of the interplay

between sections 767 and 768 given by the Second Circuit in *Carvel Corp. v. Noonan*, 350 F.3d

6 (2d Cir. 2003).  As the Second Circuit noted,

> [T]he Restatement further distinguishes between generic instances of
> interference and those special (although more frequently encountered)
> instances in which the plaintiff and defendant are market competitors. . . .
> [I]f the plaintiff claims that a *competitor* interfered with its prospective
> economic relations . . . then the Restatement counsels that liability should
> only obtain where the defendant 'employed wrongful means.' Wrongful
> means include a subset of the improper conduct listed in the § 767
> commentary . . . . The Restatement's distinction between competitors and
> non-competitors is intended to strike a balance between protecting
> economic relations and encouraging competitive behavior in the market.
> Interference with prospective economic relations is, one might argue, the
> *sine qua non* of competition - and thus should bring liability only where
> the conduct is highly reprehensible.

*Id.* at 18-20 (emphasis in original).  The court explains that under New York law, it is the

plaintiff who bears the burden of establishing that the defendant's conduct was improper under

the section 768 requirements.  *Id.* at 19.  While this Court recognizes that the discussion found in

*Carvel* is in no way binding on Kentucky, the *Carvel* approach is well reasoned and the best

approach for dealing with tortious interference with prospective business relations under the

facts of the present case.      As the *Carvel* court noted, strong policy reasons support a more

stringent showing of improper interference when the parties are competitors.  *Id.* at 20.

Kentucky courts would no doubt agree with this policy of protecting proper competition.

---

      [4]The Court notes that section 768 uses the phrase "wrongful means" not "*significantly* wrongful means."
The Court has used the phrase "*significantly* wrongful means" in the instructions because that is the language used
by the Kentucky Supreme Court.  *Hornung*, 754 S.W.2d at 859.

In sum, the Court finds that Kentucky would utilize the section 768 factors as the appropriate factors for evaluating the legality of competitive conduct.  *Id.*  Since Ventas and HCP were competitors in the specific transaction to acquire Sunrise, section 768 provides the relevant factors for assessing the properness of HCP's conduct.  While Kentucky courts might adopt the section 768 factors as an affirmative defense, this Court predicts otherwise.  The more straight forward and understandable approach is that section 768 contains the thrust of an instruction on intentional interference in the competitor context.  Kentucky courts understand that the competitor relationship is different and the jury instructions should be written affirmatively to reflect that.  Because the Court has found Ventas and HCP to be competitors as matter of law, Section 768 provides the proper formulation to first assess HCP's conduct.

Nevertheless, the Court believes that some of the factors enumerated in section 767 provide helpful guideposts for examining the alleged wrongfulness of HCP's actions.  The factors, such as the parties conduct, motives, and the circumstances of the transaction, can be utilized by the jury to determine whether HCP's conduct was "significantly wrongful."  Formulating the jury instruction based on this analysis best captures the spirit of the Restatement as adopted by Kentucky and fits with the development of Kentucky's law of intentional interference.[5]

---

[5] Having established that section 768 provides the proper jury instruction in this case, the Court has eliminated three of the section 768 factors from consideration by the jury.  Section 768 provides that the acts of a competitor can be wrongful if (1) the business relation does not concern a matter involved in the competition between the actor and the other party, (2) the actions create or continue an unlawful restraint of trade, or (3) the purpose of the interference is not at least in part to advance the interfering party's interest in competition.  Restatement (Second) of Torts § 768(1)(a), (c) & (d).  The Court has determined as a matter of law that these elements have not been proved at trial in this case.

II.

The other primary issue regarding jury instructions before the Court is the proper definition of causation required for a tortious interference with business relations claim.  The parties debate whether section 766B of the Restatement (Second) of Torts requires the plaintiff to prove that "but for" the defendant's improper interference the prospective business relationship would have occurred.  In *Gray v. Central Bank & Trust Co.*, 562 S.W.2d 656 (Ky. Ct. App. 1978), the Kentucky Court of Appeals found that a claim for tortious interference with prospective business relationships could not succeed where the plaintiff "utterly failed to prove that they would have been awarded the contract in the absence of [the defendant's] interference." *Id.* at 659.  *Gray* clearly calls for a "but for" instruction and fits with the language of the jury instructions crafted for this case.

Additionally, the reasoning for such an instruction is compelling.  In *Technology for Energy Corp. v. Scandpower*, 880 F.2d 875 (6th Cir. 1989), the court held that "but for" causation was required because "it prevents the plaintiff from obtaining a 'windfall' in the form of damages for interference with an economic opportunity which it would not have obtained even if the defendant had done nothing wrong."[6] *Id.* at 877.  Certainly, this logic applies to the present case.  If Ventas never would have succeeded in having its $15 per unit bid approved in the absence of any improper interference by HCP, then Ventas is certainly not entitled to any award on the basis that HCP prevented it from acquiring Sunrise at $15 per unit.

The Court has instructed the jury in accordance with this Memorandum Opinion and more specifically as set forth on the attached instructions.

---

[6] While the *Scandpower* case involves application of California law and clearly is not binding on Kentucky courts, this Court finds that Kentucky would agree with the basic logic and reasoned analysis set forth in the case.

September 4, 2009

**John G. Heyburn II, Judge**
**United States District Court**

cc:     Counsel of Record

## INSTRUCTION NO. 1

Ventas claims that HCP intentionally and improperly interfered with its expectation of acquiring Sunrise REIT at the agreed price of $15 per unit.  The law recognizes that everyone has a right to establish and conduct a lawful business, free from unlawful interference.  However, the very essence of lawful competition is that it necessarily interferes with prospective business relations of others.  Ventas and HCP were competitors.  In these circumstances, therefore, to find for Ventas, you must conclude that each of the following elements is more likely true than not:

1. Ventas had a reasonable likelihood or probability of acquiring Sunrise REIT at $15 per unit;

2. HCP knew about the probable acquisition of Sunrise REIT;

3. HCP intentionally and improperly interfered with Ventas's acquisition of Sunrise REIT at $15 per unit;

4. HCP's improper interference prevented Ventas from acquiring Sunrise REIT at $15 per unit; and

5. HCP's improper interference was a substantial factor in causing Ventas's damages. If you find, however, that Ventas has not proved any one or more of these elements, then you must find for HCP.

Some explanation and further definitions are important when discussing the above elements.  First, to prove element No. 1, Ventas need not show that the purchase of Sunrise REIT shares at $15 was a certainty.  On the other hand, it must certainly show something more than wishful thinking, hope, or optimism.  It must show a reasonable likelihood or probability.

Ventas and HCP were business competitors generally, and were competing here to acquire Sunrise REIT.  Improper interference, as referenced in element No. 3, has a special

meaning among competitors.  In these circumstances then, the only way to find in favor of Ventas is to find that HCP employed "significantly wrongful means" to interfere with Ventas's acquisition of Sunrise REIT at $15 per unit.

For purposes of this instruction, "significantly wrongful means" includes conduct such as fraudulent misrepresentation, deceit and coercion.  Among other things, you may consider the parties' conduct, motive, and the circumstances of the transaction to illuminate whether HCP's conduct amounts to "significantly wrongful means."  To the extent you consider a party's motive in causing harm, it must be based on actual evidence of motive, rather than a witness's opinion of another's motive.

As part of element No. 3, Ventas must also show that HCP intended to improperly interfere with the acquisition of Sunrise REIT.  As the word "intent" is used there, HCP's conduct was intentional if its purpose was to improperly interfere with Ventas's acquisition of Sunrise REIT, or if HCP knew the improper interference was certain or substantially certain to result.

In element No. 4, to find that HCP prevented Ventas from acquiring Sunrise REIT at $15 per unit, you must determine that "but for" HCP's improper interference Ventas would have acquired Sunrise REIT at $15 per unit.  This "but for" test means that if HCP's improper interference had never occurred, Ventas would have acquired Sunrise REIT at $15 per unit.

If you find that HCP improperly interfered with a valid business expectancy, element No. 5 requires you also determine whether HCP proximately caused Ventas's damages.  HCP's conduct is the proximate cause of Ventas's loss if you find that it was a substantial factor in producing the loss or damage.

I also need to give you information about a case related to this one.  The parties to this

action have previously resolved related issues in the Canadian court system. The important facts from those cases are as follows: In the week after HCP made its $18 topping bid, Sunrise REIT sought guidance from a Canadian court in interpreting its confidentiality agreement with HCP and its purchase agreement with Ventas. In that case, Sunrise REIT and HCP generally took the position that the confidentiality agreement and purchase agreement did not prohibit HCP's $18 bid. Ventas took the opposite position.  The Canadian court found:

1) HCP's confidentiality agreement precluded it from making the $18 topping bid. By making the bid, HCP breached its confidentiality agreement with Sunrise REIT;

2)  The purchase agreement between Sunrise REIT and Ventas prohibited Sunrise REIT from submitting HCP's bid to its unitholders; and

3) Sunrise REIT's auction process, leading to Ventas's purchase agreement, was objectively reasonable and fair.

HCP did breach its confidentiality agreement by submitting the February 14 topping bid. This fact alone is not sufficient to establish tortious interference. However, it may be considered along with the other evidence, in determining whether HCP engaged in improper interference.

**If you find each of the five elements above to be true, answer "Yes" under Question #1 on the Verdict Form and proceed to Instruction #2.  If you do <u>not</u> find each of the five elements above true, answer "No" under Question #1, sign and date the Verdict Form, and return to the courtroom.**